### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHAMPOIRE ORANGE, | : | Civil No. 1:22-CV-01019 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| R. KEEN, *et al.*, | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## <u>MEMORANDUM</u>

In this *Bivens* action brought by Shampoire Orange ("Plaintiff"), presently before the court is Defendants' motion for summary judgment for failure to exhaust administrative remedies, or in the alternative to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 27.) Also pending is Plaintiff's motion to proceed with discovery. (Doc. 44.) The court will deny Defendants' motion for summary judgment, and grant Defendant's alternative motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) in part. The only surviving claims are Plaintiff's Eighth Amendment failure to protect claim and the conspiracy claim. Since Defendants will be given an opportunity to answer the complaint prior to the start of discovery, Plaintiff's motion to proceed with discovery is denied.

## BACKGROUND AND PROCEDURAL HISTORY

In June of 2022, Plaintiff, a federal prisoner housed at the United States Penitentiary Canaan ("USP Canaan") in Waymart, Pennsylvania at the time, filed a complaint.  (Doc. 1.)  The complaint named ten Defendants: (1) J. Keen ("Keen"), officer at UPS Canaan; (2) B. Price ("Price"); (3) K. Oakley ("Oakley"), medical nurse at UPS Canaan; (4) J. Simonson ("Simonson"), medical director at USP Canaan; (5) A. Burgh ("Burgh"), officer at USP Canaan; (6) G. Zevan ("Zevan"), Disciplinary Hearing Officer at USP Canaan; (7) L.T. Frisk ("Frisk"); (8) B. Butts ("Butts") officer at USP Canaan; (9) R. Orth ("Orth"), officer at USP Canaan; and (10) Ofc. Houch ("Houch"), officer at USP Canaan.  (*Id.*, pp. 3–6.)[1]  The complaint raises Eighth and Fourteenth Amendment claims based on an allegedly prearranged attack on Plaintiff by another inmate on December 28, 2021, an attack against Plaintiff by officers on December 28, 2021, and a failure to provide medical care for the resulting injuries.  (*Id.*)

## JURISDICTION AND VENUE

The court has jurisdiction over Plaintiff's action pursuant to 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.  Venue is proper in this district because the alleged acts and omissions giving rise to the

---

[1] For ease of reference, the court utilizes the page numbers from the CM/ECF header.

claims occurred at USP Canaan, located in Wayne County, Pennsylvania, which is within this district.  *See* 28 U.S.C. § 118(b).

**DISCUSSION**

Defendants have filed a joint motion for summary judgment and to dismiss for failure to state a claim.  (Doc. 27.)  Therefore, the court will address each portion of the joint motion in turn.

**A. Defendants' Motion for Summary Judgment Will Be Denied.**

**1.  Summary Judgment Standard**

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary."  *Id.*  "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case."  *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable

inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."

*Celotex*, 477 U.S. at 322.  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## 2.  Facts Regarding Exhaustion of Administrative Claims.

Defendants' motion asks the court to grant summary judgment based on Plaintiff's failure to exhaust his administrative remedies.  (Doc. 29.)  Therefore, the court sets forth the facts alleged by both parties regarding administrative exhaustion and finds that the parties agree that Plaintiff did not exhaust his administrative remedies, but there is a genuine dispute of facts as to whether or not administrative remedies were available to Plaintiff.  Therefore, the motion for summary judgment will be denied.

### i.  Defendants' Alleged Facts

Defendants allege that Plaintiff was confined at USP Canaan between December 22, 2021 thru December 14, 2022.  (Doc. 31, p. 2.)  The Bureau of Prisons ("BOP") maintains a computerized system of inmate administrative remedies called the Administrate Remedy Generalized Retrieval, which Defendant attached, showing every administrative remedy filed by Plaintiff prior to his June

29, 2022 complaint.  (Doc. 31, p. 2; Doc. 31-1, pp. 10–21.)  Between December

22, 2021 and June 29, 2022, Plaintiff failed seven administrative remedies with

only one pertaining to the claims raised in the instant complaint – Administrative

Remedy No. 1108964.  (Doc. 31, p. 3; Doc. 31-1, pp. 19–20.)  Administrative

Remedy No. 1108964 was an appeal of the Hearing Officer Report filed on April

7, 2022.  (Doc. 31-1, pp. 19–20, 23–26.)  Plaintiff appealed the Hearing Officer

Report four times with the Regional Director prior to filing this complaint:

February 3, 2022 (this filing was duplicated); May 17, 2022; and June 8, 2022;

(Doc. 31, p. 3; Doc. 31-1, pp. 19–20.)  Plaintiff filed an appeal three additional

times after filing this complaint: July 5, 2023; July 15, 2022; and August 15, 2022.

(Doc. 31, p. 4; Doc. 31-1, pp. 20–21.)  Each of the seven times, the appeal was

denied.  (Doc. 31, pp. 3–4; Doc. 31-1, pp. 19–21.)  Plaintiff never filed an appeal

with the Central Office.  (Doc. 31, p. 4; 31-1, pp. 19–21.)

During this time, Plaintiff filed multiple other requests for administrative

remedies including 1112146-F1 regarding missing jail time credit denied on March

14, 2022, appealed to the Regional Director and denied on March 29, 2022, and

appealed to the Regional Direction second time and denied on July 11, 2022.

(Doc. 31-1, pp. 19–20.)  Plaintiff also filed Grievance No. 1116019-F1 requesting

an administrative remedy denied on April 6, 2022, appealed to the Regional

Director and denied on April 15, 2022, and appealed to the Central Office and

denied on May 13, 2022.  (*Id.*)  Plaintiff also sought an appeal of a decision of the

Hearing Officer, which was denied on June 10, 2022 under Grievance No.

1116632-R1.  (*Id.*, p. 20.)

### ii.  Plaintiff's Alleged Facts

Plaintiff states that he arrived at USP Canaan on December 22, 2021.  (Doc.

42, p. 1.)  He states that on December 28, 2021 he was assaulted by inmate Blake

and by two BOP staff who broke two of his ribs with two punches while he was

handcuffed.  (*Id.*, pp. 1–2.)  He states that after the December 28, 2021 incident,

BOP staff threatened to cause him harm if he were to write them up for the

misconduct.  (*Id.*, p. 2.)  He states that on January 10, 2022, he wrote a BP-8 form

about BOP staff failure to protect him and denying him proper medical care for the

December 28, 2021 incident.  (*Id.*)  He alleges that an officer saw him turn in the

grievance and told him they would break his legs if he wrote them up.  (*Id.*)  He

states he never received a response from the January 10, 2022 BP-8 form.  (*Id.*)  He

states that on January 20, 2022, he gave a counselor a sensitive BP-9 form about

being denied proper medical treatment and failure to protect him from harm and

never received a response.  (*Id.*)  He states that he then filed a Grievance No.

1116019 informing the administration that he never received a response to his

grievance.  (*Id.*)

Additionally, Plaintiff attached a copy of the Grievance No. 1116019

appeals to the Regional Director and Central Office.  (Doc. 41-7.)  The subject of

these grievance appeals was the BOP's failure to respond to the BP-8 and BP-9

forms he filed following the initial assault in December of 2021.  (*Id*.)  The reason

for the rejection of the appeal to the Central Office was a failure to file informal

resolution, BP-9, BP-10 and then BP-11 forms.  (*Id*.)

### 3. Plaintiff, the Non-Moving Party, Has Presented Sufficient Evidence to Survive Summary Judgment.

The Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e et

seq., requires prisoners to exhaust available administrative remedies before suing

prison officials for alleged constitutional violations.  *See id.* § 1997e(a); *Ross v.

Blake*, 578 U.S. 632, 639, 642 (2016) (explaining that only "available" remedies

must be exhausted).  Proper exhaustion is mandatory, even if the inmate is seeking

relief—like monetary damages—that cannot be granted by the administrative

system.  *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  However, there are

situations in which a grievance procedure may be rendered "unavailable" to an

inmate, such as when a prison official thwarts an inmate's ability to use it, *Ross*,

578 U.S. at 643–44, when intimidation by means of "serious threats of retaliation

and bodily harm" prevent an inmate from filing, *Rinaldi v. United States*, 904 F.3d

257, 266–67 (3rd Cir. 2018), or when a prison has "rendered its administrative

remedies unavailable . . . when it failed to timely (by its own procedural rules)

respond to [an inmate's] grievance and then repeatedly ignored his follow-up requests for a decision on his claim." *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 154 (3d Cir. 2016).

The BOP has a multi-step administrative remedy program allowing an inmate "to seek formal review of an issue relating to any aspect of his/her own confinement."  See 28 C.F.R. § 542.10(a).  First, an inmate should attempt informal resolution of the issue with the appropriate staff member.  *See id*. § 542.13(b).  If informal resolution is unsuccessful, the inmate may submit a formal written grievance, using the BP-9 form, to the Warden within twenty (20) calendar days "following the date on which the basis for the Request occurred."  *See id*. § 542.14(a).  The Warden is to respond to the request within twenty (20) calendar days.  *See id*. § 542.18.  An inmate dissatisfied with the Warden's response may appeal, using the BP-10 form, "to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response."  *See id*. § 542.15(a).  Finally, an inmate may appeal the Regional Director's response, using the BP-11 form, to the BOP's General Counsel "within 30 calendar days of the date the Regional Director signed the response."  *See id*.

Decision Hearing Officer appeals are filed initially to the Regional Director for the region where the inmate is located and are not required to be filed initially with the Warden.  28 C.F.R. § 542.14(d)(2).

Under Third Circuit precedent, "exhaustion is a question of law to be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cty.*, 728 F.3d 265, 269 (3d Cir. 2013); *see also Drippe*, 604 F.3d at 781 ("Juries decide cases, not issues of judicial traffic control. Until the issue of exhaustion is resolved, the court cannot know whether it is to decide the case or the prison authorities are to.") (quoting *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)); *cf. Wilkerson v. United States*, No. 3:13-1499, 2014 WL 1653249, at *9 (M.D. Pa. Apr. 24, 2014) ("[I]f there is a dispute of material fact, the court should conduct a plenary trial on the contested facts prior to making [an exhaustion of administrative remedies] determination."). "Although the availability of administrative remedies to a prisoner is a question of law, it necessarily involves a factual inquiry." *Small*, 728 F.3d at 271 (citations omitted).

Here, Defendants have presented evidence that Plaintiff filed multiple grievances between December 28, 2021 and June 29, 2022, when he filed the instant complaint. In addition to the seven grievances filed to appeal the Hearing Officer's decision at issue in this action, Plaintiff filed multiple other grievances. (Doc. 31-1, pp. 19–20.) Therefore, Defendants have presented evidence that despite Plaintiff's allegations that BOP staff prevented him from filing the necessary documents to exhaust his administrative remedies, he was able to file multiple requests for administrative remedies during the relevant period.

However, Plaintiff has presented evidence that Grievance No. 1116019 focused on the BOP's failure to respond to the initial BP-8 and BP-9 forms that were filed in January of 2022 following the December 28, 2021 assaults at issue in Plaintiff's complaint. (Doc. 41-5.) Therefore, Plaintiff has supplied evidence that he was, at a minimum, asserting that his grievances regarding the December 28, 2021 incidents were not being addressed well before the complaint was filed with this court. Additionally, he exhausted the administrative remedies available to him in seeking to have his initial grievances resolved. There is an unresolved factual issue of why these initial grievances were not filed with the BOP, when Plaintiff asserts that he filed both a BP-8 and a BP-9 form and then continued to seek resolution of these forms. As such, the court cannot grant summary judgment on the issue of administrative exhaustion, and Defendants' motion will be denied. The court is not required to hold a trial on the issue of administrative exhaustion immediately because discovery has not yet occurred, and the parties will have an opportunity to readdress the issue of administrative exhaustion in subsequent dispositive orders.

## B. Defendants' Motion To Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) Will Be Granted In Part.

### 1. Motion to Dismiss Standard

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  "Conclusory allegations of liability are insufficient" to survive a motion to dismiss.  *Garrett v. Wexford Health*, 938 F.3d 69, 92 (3d Cir. 2019) (quoting Iqbal, 556 U.S. at 678–79).  To determine whether a complaint survives a motion to dismiss, a court identifies "the elements a plaintiff must plead to state a claim for relief," disregards the allegations "that are no more than conclusions and thus not entitled to the assumption of truth," and determines whether the remaining factual allegations "plausibly give rise to an entitlement to relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) abrogated on other grounds by *Mack v. Yost*, 968 F.3d 311 (3d. Cir. 2020).

When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)).  In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the

complaint, matters of public record, as well as undisputedly authentic documents"
attached to a defendant's motion to dismiss if the plaintiff's claims are based upon
these documents.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing
*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196
(3d Cir. 1993)).

The pleadings of self-represented plaintiffs are to be liberally construed and
held to a less stringent standard than formal pleadings drafted by attorneys.  See
Erickson v. Pardus, 551 U.S. 89, 94 (2007); *Fantone v. Latini*, 780 F.3d 184, 193
(3d Cir. 2015), as amended (Mar. 24, 2015).  Self-represented litigants are to be
granted leave to file a curative amended complaint even when a plaintiff does not
seek leave to amend, unless such an amendment would be inequitable or futile.
*See Est. of Lagano v. Bergen Cnty. Prosecutor's Off*., 769 F.3d 850, 861 (3d Cir.
2014); see also Phillips, 515 F.3d at 245.  A complaint that sets forth facts which
affirmatively demonstrate that the plaintiff has no right to recover is properly
dismissed without leave to amend.  *Grayson v. Mayview State Hosp*., 293 F.3d
103, 106 (3d Cir. 2002).

## 2.  Allegations In the Complaint

The complaint brings a *Bivens* action against the ten defendants alleging
Eighth Amendment violations including cruel and unusual punishment, excessive
use of force, failure to protect from harm, deliberate indifference to a medical need,

and denying proper medical care, and Fourteenth Amendment violations including denial of due process and failure to supervise, and conspiracy to commit such violations. (Doc. 1.) Specifically, Plaintiff alleges that on December 22, 2021, he arrived at USP Canaan on a wheelchair transfer from another USP facility due to a knee injury. (*Id*., p. 9.) He requested protective custody from Lieutenant Young due to threats to his life. (*Id*.) He alleges that Defendant Frisk was present and told Plaintiff that he controlled the isolated/protective housing unit and if he did not go to population, he would make it "a living hell" for Plaintiff in the protective housing unit. (*Id*.)

Nonetheless, Plaintiff was sent to protective custody on December 22, 2021, and while in handicap cell 140, Defendant Burgh placed Inmate Blaine in the cell with Plaintiff. (*Id*.) Plaintiff alleges that Inmate Blaine is a well-known violent inmate who was in protective custody for new federal charges for stabbing another inmate. (*Id*.) While Inmate Blaine was placed in the cell, Plaintiff told Defendant Burgh that he was not supposed to be housed with inmates with a status such as Inmate Blaine. (*Id*.) To which Defendant Burgh allegedly responded by reminding Plaintiff that he was told that they were going to make this stay "a living hell." (*Id*.) Plaintiff alleges that Inmate Blaine then told him he was placed in the cell to beat Plaintiff up. (*Id*.)

14

Plaintiff alleges that in the following days, Defendants Burgh and Frisk came by the cell making comments to Inmate Blaine such as "He still in there" and "you done got soft." (*Id.*) Plaintiff alleges that on December 28, 2021, Defendant Bruch told Inmate Blaine "you need to do something today" so inmate Blaine told Plaintiff to tell the officer to get me out of the cell or he was going to beat him up. (*Id.*) At 5:30 p.m., Plaintiff pushed the emergency button to inform the officer working the range that he was in fear for his life with inmate Blaine threating to cause him bodily harm. (*Id.*) Defendant Orth told him that since he was not bleeding, he did not care about his safety. (*Id.*)

Plaintiff alleges that when Defendant Orth left, Inmate Blaine started choking Plaintiff as he sat in a wheelchair. (*Id.*) When Inmate Blaine stopped choking him, Plaintiff alleges that he hit the emergency button. (*Id.*) When Defendant Orth made his next rounds at 6:00 p.m., Plaintiff told him that Inmate Blaine had choked him and requested help. (*Id.*) Plaintiff alleges that Defendant Orth again refused. (*Id.*)

When Defendant Orth left, Plaintiff alleges that Inmate Blaine began punching Plaintiff in the face and head area. (*Id.*) Plaintiff alleges that he fell out of his wheelchair and Inmate Blaine punched him more in the face and head. (*Id.*) Plaintiff called for help and the cell across form him said they hit the emergency button until Defendant Orth did his next security round at 6:40 p.m.

15

When Defendant Orth arrived, Inmate Blaine was in the back of the cell and Plaintiff was on the floor of the cell with a bleeding face and requested Defendant Orth's help.  (*Id*.)  Plaintiff states that Defendant Orth said "stop fighting" and opened the tray flap and started spraying Plaintiff with O.C. spray.  (*Id*.)  Plaintiff alleges that Defendant Keen told Inmate Blaine to get behind the shower curtain and shot Plaintiff in the back at least 16 times with a .68 cal pepper ball launcher. (*Id*.)  Defendant Keen told Plaintiff to cuff-up, and Plaintiff crawled back into his wheelchair.  (*Id*.)  Defendant Keen then told Plaintiff to stand up and cuff-up or he would shoot Plaintiff some more.  He stated that he crawled up the wall due to his pre-existing knee injury and leaned on the door to cuff up.  (*Id.*)

Plaintiff alleges that Defendants Houch and Price assisted Defendants Keen and Orth to clear the cell.  (*Id*., p. 10.)  Plaintiff sates that two of the officers grabbed him under the arms while he was cuffed behind his back and dragged him to a room with a shower in it.  (*Id*.)  Plaintiff alleges that his eyes were burning so bad from the excessive O.C. spray he could not open them.  (*Id*.)  H alleges that he was taken into a shower and was leaned into the shower while cuffed behind his back with an officer holding him by the arm.  (*Id*.)  The officers said "you want protective custody" and then Plaintiff felt two hard blows to his right-side rib towards his back.  (*Id*.)  His knees allegedly buckled, and officers picked him up and ran his head into the shower stall.  (*Id*.)  He was then dragged to a holding cell

16

across from Inmate Blaine, and when he asked for his wheelchair, Plaintiff states that Defendant Keen said he'd taken the wheelchair for fighting. (*Id*.) Plaintiff alleges that while in the holding cell, he heard Defendant Keen talking with Defendant Oakley telling Defendant Oakley to write down on the medical report that Inmate Blaine had been hit in the head. (*Id*.) Plaintiff then alleges that Defendant Keen told Inmate Blaine that Defendant Oakley was going to say he suffered a hit to his head. (*Id*.) Inmate Blaine stated he was never hit. (*Id*.) Defendant Keen threatened to take Inmate Blaine's personal property if he said otherwise.

Plaintiff then alleges that Defendants Price and Houch came into the holding cell saying they were going to take him to a medical assessment and that he had better not say anything about them punching him in the ribs. (*Id*.) Plaintiff was then taken to a medical assessment on camera while both officers held him because the pain from the cracked ribs was so significant that he felt as if he were going to pass out. (*Id*.) After medical looked at Plaintiff's head and face from the assault by Inmate Blaine, he was taken back to cell 140, uncuffed, and dropped on the floor. (*Id*.) He again asked for his wheelchair, and Defendant Keen told him that he was taking his wheelchair and the medical director will do what he says. (*Id*.) Plaintiff alleges he then laid on the floor and waited for the shift to change at 12:00 a.m. (*Id*.)

Plaintiff alleges that on December 29, 2021, he was still laying on the floor and the Warden was doing a walk through with administration. (*Id.*) Plaintiff asked for the medical director, which was Defendant Simonson, who came to the cell window along with Defendant Keen. (*Id.*) He asked Defendant Simonson for help because his rib was broken, saying it was hard to breathe. (*Id.*) Plaintiff then asked for his wheelchair back and told Defendant Simonson that an orthopedic surgeon ordered him to use the wheelchair, and Defendant Simonson stated that he was told the chair was taken for fighting and he did not care. (*Id.*)

On December 29, 2021, Plaintiff received a Disciplinary Incident Report written by Defendant Orth for assaulting Inmate Blaine. (*Id.*) Plaintiff alleges that he never went to see the Unit Team for the UDC hearing, which is the second step an inmate must go through for an assault incident report. (*Id.*) He alleges that he did attend the Disciplinary Hearing in front of Defendant Zevan, in which Plaintiff informed him he had never seen UDC or signed any paper that he was seen by the UDC. (*Id.*, pp. 10–11.) Plaintiff alleges that Defendant Zevan, at his request, treated Inmate Blaine as a witness and asked him to write a statement, which Inmate Blaine did, saying that that Plaintiff did not assault him. (*Id.*) Plaintiff states that Defendant Zevan found him guilty even with Inmate Blaine's statement. (*Id.*)

Plaintiff alleges that he submitted multiple medical requests for treatment of his injuries.  (*Id.*)  He was treated on January 18, 2022, and Defendant Simonson ended the visit and rushed him out after Plaintiff said his ribs were broken.  (*Id.*)  On January 25, 2022, he received an x-ray, and on February 8, 2022, P.A. Whalter came to his cell and told him that two of his ribs showed cracks all the way through.  (*Id.*)  He was then given pain medications and told to rest.  (*Id.*)

### 3. *Bivens* Actions

In *Bivens*, the Supreme Court recognized that a plaintiff may bring an implied damages remedy against a federal official for violation of the plaintiff's Fourth Amendment right to be free from unreasonable searches, despite the fact that no federal statute or constitutional provision allowed such a cause of action. *Bivens*, 403 U.S. at 397.  Since that decision, the Supreme Court has only recognized an implied damages remedy against a federal official in two other cases: *Davis v. Passman*, 442 U.S. 228, 245 (1979) (recognizing an implied cause of action for sex discrimination under the Fifth Amendment), and *Carlson v. Green*, 446 U.S. 14, 18–23 (1980) (recognizing an implied cause of action for inadequate medical care under the Eighth Amendment). *See Mack*, 968 F.3 at 314 n.1.

In the absence of Supreme Court extensions of the implied damages remedy under *Bivens*, lower federal courts recognized that they had the power to extend

*Bivens* to new fact situations in appropriate circumstances. *See id.* at 319. That changed with the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).

In *Ziglar*, the Supreme Court considered several *Bivens* claims brought to enforce the plaintiff's rights under the Fourth and Fifth Amendments, all of which were factually distinct from the claims in *Bivens*, *Davis*, and *Carlson*. *Id.* at 1853–54. In analyzing the claims, the court noted that it had taken a much more cautious approach to implying causes of action in the years since *Bivens* had been decided. *Id.* at 1855–56. Given that more cautious approach, the court acknowledged that the decision in *Bivens*, *Davis*, and *Carlson* "might have been different if they were decided today." *Id.* at 1856. The Supreme Court instructed lower courts to be cautious in extending *Bivens* remedies to new contexts, noting that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," and that decisions of whether to recognize new causes of action should generally be left to Congress. *Id.* at 1857 (quoting *Iqbal*, 556 U.S. at 675).

Under *Ziglar*, a court presented with a *Bivens* claim must conduct a two-part analysis. *Mack*, 968 F.3d at 320. First, the court "must determine whether the *Bivens* claim presents a 'new context.'" *Id.* (quoting *Ziglar*, 137 S. Ct. at 1859). A case presents a new context if "is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court." *Id.* (internal alterations omitted)

(quoting *Ziglar*, 137 S. Ct. at 1859).  The difference between the two cases does not need to be stark, because "a modest extension is still an extension."  *Id.* (quoting *Ziglar*, 137 S. Ct. at 164).  Second, if the case presents a new context, the court "must then determine if there are 'special factors counselling hesitation' in expanding *Bivens*."  *Id.* (quoting *Ziglar*, 137 S. Ct. at 1857).  This determination "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Id.* (quoting *Ziglar*, 137 S. Ct. at 1857–58.)  "If 'there are any special factors that counsel hesitation,' courts must 'reject the request' to expand *Bivens*."  *Id.* (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).

More recently, however, on June 8, 2022, the Supreme Court decided *Egbert v. Boule*, 142 S. Ct. 1793 (2022).  In that case, the Supreme Court clarified the framework that courts are to use before implying a cause action for money damages in a new Bivens context.  In particular, the Supreme Court recognized its precedents that describe the two-part inquiry, but explained that these two parts "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy."  *See id*. at 1803.  The Supreme Court further explained that, "[i]f there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy."  *See id*. (citation and internal quotation marks omitted).

Thus, the outcome of *Egbert* is—essentially—that extending a *Bivens* remedy to a new context will be unavailable in all but the most unusual of cases. *See id*. (instructing that "[i]f there is a rational reason" to think that Congress is better equipped to create a damages remedy, "as it will be in most every case, . . . no *Bivens* action may lie"). In other words, the Supreme Court has "all but closed the door on *Bivens* remedies." *See Dyer v. Smith*, 56 F.4th 271, 277 (4th Cir. 2022) (citation omitted).

Plaintiff's complaint attempts to bring *Bivens* claims in four contexts: (1) due process, (2) excessive force, (3) failure to protect, and (4) deliberate indifference to a severe medical need. (Doc. 1.) The first two are new contexts under *Bivens* and there are sound reasons to find that Congress is better positioned than the Judiciary to weigh the costs and benefits of allowing a damages action to proceed. Plaintiff's failure to protect and deliberate indifference claims are not new contexts under *Bivens*. Therefore, the court will consider if complaint plead sufficient facts to proceed to discovery on these claims.

### i.  New Contexts

As discussed above, Plaintiff asserts a *Bivens* claim based upon allegations of due process violations and the use of excessive force, and these constitute new contexts under *Bivens*.

As set forth above, a *Bivens* claim arises in a new context when the case is "different in a meaningful way from previous *Bivens* cases decided" by the Supreme Court. *See Ziglar*, 582 U.S. at 139. Here, however, the court finds that Plaintiff's Fourteenth Amendment and Eighth Amendment claims "bear[s] little resemblance" to the three (3) *Bivens* claims that the Supreme Court "has approved in the past:" (1) a Fourth Amendment "claim against FBI agents for handcuffing a man in his own home without a warrant;" (2) a Fifth Amendment "claim against a Congressman for firing his female secretary;" and (3) an Eighth Amendment "claim against prison officials for failure to treat an inmate's asthma." *See id.* at 140 (citations omitted).

Although Plaintiff invokes the Fourteenth Amendment, the Fourteenth Amendment only applies to the actions of state actors and not federal actors. *See Brown v. Philip Morris, Inc.*, 250 F.3d 789, 800 (3d Cir. 2001). The court therefore liberally construes the complaint and addresses Plaintiff's due process claim under the Fifth Amendment and the failure to supervise claim consistent with the already raised failure to protect claim under the Eighth Amendment and will address it below. *Davis* dealt with a claim for gender discrimination under the Fifth Amendment's equal protection component of the due process clause. 442 U.S. 228. However, Plaintiff's alleged due process violation is in the context of procedural due process associated with a disciplinary hearing, and not equal

protection.  The claims do arise under the same constitutional amendments, but a common constitutional basis is simply not enough to link a new *Bivens* theory to an existing *Bivens* context.  *See Hernandez*, 140 S. Ct. at 743 (indicating courts must "look beyond the constitutional provisions invoked").

As for the Eighth Amendment use of excessive force claim, although *Bivens* itself concerned an excessive use of force claim, that claim was asserted under the Fourth Amendment and not the Eighth Amendment.  Similarly, although *Carlson* involved an Eighth Amendment claim, that claim stemmed from allegations of inadequate prison medical care and not allegations of excessive use of force. Thus, while Plaintiff's case arguably shares broad similarities with *Bivens* and *Carlson*, such broad similarities will be insufficient to support the court extending *Bivens* to this new context.  *See Egbert*, 142 S. Ct. at 1805 (explaining that "almost parallel circumstances" or "superficial similarities" with *Bivens*, *Davis*, and *Carlson* "are not enough to support the judicial creation of a cause of action" (citation and internal quotation marks omitted)).

Thus, for these reasons, the court concludes that these two claims arise in new contexts, and the court must determine under *Ziglar* and *Egbert* whether there are any special factors that counsel hesitation in the court extending a Bivens remedy to this claim.  *See Egbert*, 142 S. Ct. at 1803.  Ultimately, the court finds that there are special factors that counsel such hesitation here.

As explained by the Supreme Court, a special factor suggests that Congress is better equipped than the Judiciary to "weigh the costs and benefits" of creating a new damages remedy. *See Egbert*, 142 S. Ct. at 1803 (citation and internal quotation marks omitted). Although various special factors may be considered, "two are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles." *See Bistrian*, 912 F.3d at 90 (citation omitted); *Ziglar*, 582 U.S. at 135 (stating that "[s]eparation-of-powers principles are or should be central to the analysis"). If "there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed[,]'" then the court cannot imply a cause of action for damages under *Bivens*. *See Egbert*, 142 S. Ct. at 1805 (emphasis in original) (citation and internal quotation marks omitted).

Here, the court finds that there are special factors that weigh against extending a *Bivens* remedy to Plaintiff's Fifth Amendment due process and Eighth Amendment use of excessive force claims. Initially, the court finds that the BOP's Administrative Remedy Program provides an alternative process for addressing Plaintiff's claims. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (holding that "administrative review mechanisms" can provide "meaningful redress and thereby forelose[ ] the need to fashion a new, judicially crafted cause of action[,]" even if those mechanisms do not "fully remedy the constitutional

violation . . .”); *see also* 28 C.F.R. § 542.10(a) (providing that “[t]he purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement”); *see* 28 C.F.R. § 542.14(d)(2) (including appeals of Decisions of Hearing Officers as part of the Administrative Remedy Program). Indeed, and as instructed by the Supreme Court, alternative remedies for aggrieved parties “independently foreclose a *Bivens* action.” *See Egbert*, 142 S. Ct. at 1806; *Malesko*, 534 U.S. at 69 (stating that, “[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability” (citation omitted)). Thus, “when alternative methods of relief are available,” as they are here, “a *Bivens* remedy usually is not.” *See Ziglar*, 582 U.S. at 145.

In addition, the court finds that “the Judiciary is not undoubtedly better positioned than Congress to authorize a damages action” in the context of the excessive use of force in federal prisons. *See Egbert*, 142 S. Ct. at 1805. The Supreme Court has generally acknowledged that “courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform[,]” that “[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government[,]” and that this “task that has been committed to the responsibility of those branches, and

26

separation of powers concerns counsel a policy of judicial restraint." *See Turner v. Safley*, 482 U.S. 78, 84–85 (1987) (emphasis added) (internal citation and internal quotation marks omitted).  Thus, extending a *Bivens* remedy to this new context "would step well into the lawmaking privilege delegated only to Congress, and well over the bounds of [the court's] limited constitutional power." *See Mammana v. Barben*, 856 F. App'x 411, 415 (3d Cir. 2021) (unpublished) (setting forth this principle in the context of a *Bivens* claim based upon allegedly unconstitutional conditions of confinement in violation of the Eighth Amendment).

Additionally, the court finds that "recognizing a *Bivens* remedy [here] would likely cause an increase of suits by inmates, increased litigation costs to the government, and . . . burdens on individual prison employees to defend such claims." *See Bistrian*, 912 F.3d at 95 (citation and internal quotation marks omitted). "Heeding the reasoning in [*Ziglar v.*] *Abbasi*, [courts] must be reluctant to 'establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation.'" *Id*. (quoting *Ziglar*, 582 U.S. at 136); *Egbert*, 142 S. Ct. at 1800 (stating that Supreme Court precedent has "made clear that, in all but the most unusual circumstances," a *Bivens* remedy should not be recognized in new contexts).  Thus, for all of these reasons, the court concludes that special factors counsel hesitation in extending a *Bivens* remedy to a plaintiff's Fifth and Eighth Amendment claims.

In sum, the court concludes that Plaintiff's Fifth Amendment due process and Eighth Amendment use of excessive force claims arise in a new *Bivens* context and there are sound reasons to find that Congress is better positioned than the Judiciary to "weigh the costs and benefits of allowing a damages action to proceed" here.  *See Egbert*, 142 S. Ct. at 1803 (citation and internal quotation marks omitted).  Accordingly, because there are such reasons to defer to Congress, the court will refrain from extending a *Bivens* remedy to Plaintiff's claims.  *See id.* Therefore, the court will dismiss Plaintiff's Fifth Amendment due process claim and Eighth Amendment use of excessive force claim.

### ii.  Failure to Protect

Plaintiff also raises a failure to protect claim against Defendants.  (Doc. 1.) In addressing this claim, the court finds that *Farmer v. Brennan*, 511 U.S. 825 (1994), is still precedent in light of *Egbert v. Boule*.  As a result, the court finds that Plaintiff's failure to protect claim is not a new context under *Bivens*.

In *Farmer v. Brennan*, the Court held that prison officials may be held liable under the Eighth Amendment for the failure to protect the plaintiff's safety.  511 U.S. at 847.  The plaintiff in *Farmer* filed a *Bivens* complaint, alleging a violation of the Eighth Amendment, because the defendants had placed the plaintiff in the general population despite knowledge that she, as a transgender woman, would be particularly vulnerable to sexual attack by some inmates.  *Id.* at 830–31.

Throughout the opinion, the Court referred to the matter as a *Bivens* action.  *See id.* at 839 ("*Bivens* actions against federal prison officials (and their 42 U.S.C. § 1983 counterparts against state officials) are civil in character. . .").  The main inquiry concerned the deliberate indifference standard of Eighth Amendment claims.  *Id.* at 842.  Thus, the Court did not dispute whether the plaintiff's Eighth Amendment claim for failure to protect was an actual *Bivens* action.  The Court held that a prison official could "be held liable under the Eighth Amendment for denying humane conditions of confinement," emphasizing that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."  *Id.* at 833–34, 848.

Although *Egbert*, *Hernandez*, and *Ziglar* do not mention *Farmer* as one of the cases in which the Supreme Court recognized a *Bivens* remedy, the Third Circuit has held, post-*Ziglar*, that *Farmer* recognized an implied *Bivens* remedy for claims that prison officials were deliberately indifferent to a risk that an inmate would be assaulted by other inmates.  *See Bistrian*, 912 F.3d at 90–91.  The Supreme Court's more recent decisions in *Hernandez* and *Egbert* and the Third Circuit's decision in *Dongarra v. Smith*, 27 F.4th 174 (3d Cir. 2022) cloud this conclusion.  *See Davis v. FCI-Schuylkill*, No. 1:22-CV-1270, 2022 WL 4348462, at *3 n.3 (M.D. Pa. Sept. 19, 2022) (Conner, J.).  Nevertheless, *Dongarra* did not overrule *Bistrian* because *Dongarra* is not an *en banc* decision.  *See, e.g., Bracey*

*v. Superintendent Rockview SCI*, 986 F.3d 274, 290 n.14 (3d Cir. 2021).  Hence, the court will continue to treat *Bistrian*, and thus *Farmer*, as binding precedent.

Here, the court acknowledges that Plaintiff is not a transgender individual, nor is he challenging his placement in the general population.  Therefore, the facts of this case are different than the facts at issue in *Farmer*.  However, this is a failure to protect claim addressing inmate-on-inmate violence and distinctions based on the prisoner's gender identity and the custodial status of the prisoner are "trivial."  *See Ziglar*, 582 U.S. at 149; *see also Shorter*, 12 F.4th at 373 n.6 (noting the "remarkable" extent of factual overlap between *Farmer* and *Shorter* is not required to conclude the case does not present a new *Bivens* context).  Thus, the court finds that based on the complaint alone, Plaintiff does not raise a new context under *Bivens*.  Therefore, the court will now address whether Plaintiff properly pleads a failure to protect claim.

"A prison official's 'deliberate indifference' to a substantial risk of harm to an inmate violates the Eighth Amendment."  *Farmer*, 511 U.S. at 828.  "[P]rison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners."  *Id*. at 833 (citations omitted).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Id*. at 834.  Accordingly, to state a claim for damages against a prison official for failure to protect from inmate

violence, "an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian*, 696 F.3d at 367.

As explained in *Beers-Capitol v. Whetzel,* in Eighth Amendment cases based on allegations of deliberate indifference on the part of prison officials or other supervisory defendants, the Supreme Court has "rejected an objective test for deliberate indifference; instead it looked to what the prison official actually knew rather than what a reasonable official in his position would have known." 256 F.3d 120, 131 (3d Cir. 2001). Specifically, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer,* 511 U.S. at 837. This requirement of actual knowledge on the part of officials means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

The Third Circuit has recognized that a mere generalized knowledge that prisons are dangerous places does not give rise to an Eighth Amendment claim. *See, e.g., Jones v. Beard,* 145 F. App'x 743 (3d Cir. 2005). However, the Third Circuit has interpreted *Farmer* to mean that "a plaintiff could make out a deliberate

indifference case by showing that prison officials simply were aware of a general risk to inmates in the plaintiff's situation[.]"  In order to show deliberate indifference in this fashion, a plaintiff needs to present evidence showing a substantial basis for demonstrating that a prison official was deliberately indifferent in the face of information that presented a substantial risk to inmate safety for a particular inmate-plaintiff.  As the Supreme Court has observed in this context: "If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was *longstanding, pervasive, well-documented, or expressly noted by prison officials in the past,* and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk *and thus must have known about it,* then such evidence would permit a trier of fact to find that the defendant-official had actual knowledge of the risk." *Farmer,* 511 U.S. at 842–43 (emphasis added).

In support of his Eighth Amendment claim, Plaintiff alleges that Defendants placed Inmate Blaine in his cell with the intention of having Inmate Blaine attack Plaintiff and proceeded to encourage Inmate Blaine to attack Plaintiff.  (Doc. 1.)  Therefore, Plaintiff has pled the required knowledge of a substantial risk.  As such, the court will not dismiss this claim at this time.  Should discovery reveal facts demonstrating "meaningful differences" between this claim and other *Bivens*

contexts, Defendants are free to raise their *Bivens* argument again in a future motion.

### iii. Deliberate Indifference

Plaintiff's deliberate indifference to a serious medical need claim also fails to present a new context under *Bivens*.  The Supreme Court has recognized an implied cause of action for inadequate medical care under the Eighth Amendment under *Bivens*.  *Carlson*, 446 U.S. at 18–23.  However, Plaintiff has failed to raise an adequate deliberate indifference to a serious medical need claim in his complaint.

To sustain a constitutional claim under the Eighth Amendment for deliberate indifference to a serious medical need, a plaintiff must make (1) an objective showing that his medical needs were serious, and (2) a subjective showing that the defendants were deliberately indifferent to those medical needs. *See Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017).  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Inst'l Inmates v. Lanzaro*, 834 F.2d 326, 346–47 (3d Cir. 1987) (citation omitted).  A prison official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.

However, "[p]rison medical authorities are given considerable latitude in the diagnosis and treatment of medical problems of inmates and courts will 'disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment.'" *Byrd v. Shannon*, No. 1:09-CV-1551, 2010 WL 5889519, at *4 (M.D. Pa. Nov. 24, 2010) (quoting *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979)). Mere disagreement over proper treatment does not state a claim upon which relief can be granted. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990); *Monmouth Cty. Corr. Inst'l Inmates,* 834 F.2d at 346 ("Courts, determining what constitutes deliberate indifference, have consistently held that mere allegations of malpractice do not raise issues of constitutional import. . . Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation."). Additionally, short delays in treatment do not rise to the level of deliberate indifference. *See Rodriguez v. Thomas*, No. 1:CV-12-2090, 2015 WL 1470719, at *9 (M.D. Pa. Mar. 31, 2015) ("short delays unaccompanied by arbitrary or unduly burdensome bureaucratic procedures" do not rise to the level of deliberate indifference).

Here, Plaintiff alleges that he received treatment on the day of the assaults for the injuries to his head and that he received treatment for the injuries to his ribs in January and February of 2022. (Doc. 1, pp. 10–11.) Therefore, based on the

fact that he received treatment for his injuries, Plaintiff has failed to allege a violation of the Eighth Amendment for the deliberate indifference to a serious medical need.  The court recognizes that generally, self-represented plaintiffs are given leave to amend their complaints when their claims are dismissed pursuant to Fed. R. Civ. P. 12(b)(g).  *Phillips*, 515 F.3d at 245.  However, the court is not required to provide an opportunity to amend a complaint when such amendments would be inequitable or futile.  *Id.*  Here, such an amendment would be futile.  In the event that any amended complaint omitted the medical treatment following the assaults, discovery would result in evidence of the medical treatment, and the deliberate indifference claim would similarly fail.  As such, this claim will be dismissed with prejudice.

### C. Conspiracy Claim

Defendants did not challenge Plaintiff's conspiracy claim in their brief in support of their motion.  (Doc. 29.)  Therefore, the conspiracy claim will not be addressed at this time, but Defendants can challenge it in subsequent dispositive motions following discovery.

### CONCLUSION

For the foregoing reasons, the court will deny Plaintiff's motion for summary judgment and grant Plaintiff's alternative motion to dismiss in part.  The court will dismiss all claims brought against Defendants except the Eighth

Amendment failure to protect claim and the conspiracy claim.  The Third Circuit has found that a self-represented plaintiff may be granted leave to file an amended complaint even when he does not seek leave to amend, unless such an amendment would be inequitable or futile.  *Phillips*, 515 F.3d at 245.  Considering the Supreme Court's restriction on new contexts under *Bivens* following *Egbert*, any attempts to cure the defects set forth above would be futile.  Therefore, Plaintiff will not be granted leave to amend.

The court will allow Defendants an opportunity to file an answer addressing the claims that have survived.  Following the answer, the court will enter a case management order initiating discovery.  Therefore, Plaintiff's motion to proceed with discovery will be denied at this time.

An appropriate order will follow.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Judge
Middle District of Pennsylvania

Dated: August 25, 2023