**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHAMPOIRE ORANGE, | : | Civil No. 1:22-CV-01019 |
| Plaintiff, | : | |
| v. | : | |
| R. KEEN, *et al.*, | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

## MEMORANDUM

Before the court is Defendants' motion for reconsideration of the court's August 25, 2023 order denying their motion to dismiss Plaintiff's Eighth Amendment failure-to-protect claim. (Doc. 58.) Also pending is Plaintiff's motion for a protective order to stay discovery until the resolution of the motion to reconsider. (Doc. 61.) Defendants have also answered the complaint. (Doc. 60.) The court will grant the motion for reconsideration, dismiss the Eighth Amendment and conspiracy claims against the individual defendants, and deny the motion for the protective order as moot. The court will also set forth a case management order for the remaining Federal Tort Claims Acts ("FTCA") claim against the United States.

### PROCEDURAL BACKGROUND AND HISTORY

Shampoire Orange ("Plaintiff") filed a complaint in the above-captioned action in June of 2022. (Doc. 1.) The June 2022 complaint raised a *Bivens* action

1

against ten defendants stemming from an attack of Plaintiff by a cellmate in December of 2021. *Id.*

On December 30, 2023, Defendants filed a joint motion to dismiss and for summary judgment. (Doc. 27.) Following briefing, the court granted the motion in part and denied the motion in part. (Doc. 46.) The court declined to dismiss the Eighth Amendment failure to protect claim after completing a survey of Third Circuit case law and concluding that *Farmer v. Brennan* recognized an implied *Bivens* remedy in Eighth Amendment failure-to-protect claims. (*Id.*, p. 29.)[1] However, the court noted that recent decisions by the Supreme Court and Third Circuit clouded this conclusion. (*Id.*)

On August 28, 2024, *Bivens* Defendants[2] filed the instant motion for reconsideration requesting the court reconsider it's denial of the previous motion to dismiss the Eighth Amendment failure-to-protect claim based on a recent Third Circuit opinion abrogating the case this court relied on in its memorandum and order. (Docs. 58, 59.) On October 22, 2024, the same Defendants filed a motion

---

[1] For ease of reference, the court uses the page numbers from the CM/ECF header.

[2] On March 6, 2023, the court received and docketed a complaint in the above-captioned action bringing an FTCA claim against the United States of America and four additional defendants for the same December of 2021 cellmate attack. *Orange v. United States*, No. 1:23-CV-00393, Doc. 1 (M.D.Pa). Plaintiff amended the complaint on December 4, 2023, with the United States as the sole defendant. (Doc. 29.) The court consolidated the FTCA case and the above-captioned action on August 26, 2024. (Doc. 57.) Therefore, post-August 26, 2024, the individual defendants are identified as "*Bivens* Defendants".

for protective order seeking that discovery be stayed pending the court's decision on the motion for reconsideration. (Doc. 61.) Plaintiff has filed a response to the motion for protective order, but not the motion for reconsideration. (Doc. 63.)

## STANDARD

Defendants' motion seeks reconsideration of an interlocutory order granting partial dismissal of the complaint. (Doc. 58.) Therefore, it is brought pursuant to Fed. R. Civ. P. 54(b). *See Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) ("[M]otions for reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial summary judgment, or any other non-final orders—are motions under Federal Rule of Civil Procedure 54(b)."). Under Rule 54(b), an order that does not dispose of every claim in an action "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *see Qazizadeh*, 214 F. Supp. 3d at 295. Reconsideration of interlocutory orders "may be had even if a movant cannot show an intervening change in controlling law, the availability of new evidence that was not available when the court issues the underlying order, or 'the need to correct a clear error of law or fact or to prevent manifest injustice.'" *Qazizadeh*, 214 F. Supp. 3d at 295 (quoting *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). "Instead, the court may permit reconsideration whenever 'consonant with justice to

do so.'" *Id.* (quoting *St. Mary's Area Water Auth. v. St. Paul Fire & Marine Ins. Co.*, 412 F. Supp. 2d 630, 632 (M.D. Pa. 2007)). Nevertheless, the following limitations apply to such motions:

> [b]efore entertaining a motion for reconsideration of an interlocutory order, the movant must still establish good cause for why the court should revisit its prior decision. Moreover, whether involving a final or interlocutory order, a motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant. A reconsideration motion should not be used to try to get a second bite at the apple or to raise new arguments or evidence that could have been proffered prior to the issuance of the order in question.

*Qazizadeh*, 214 F. Supp. 3d at 295–96 (citations and internal quotation marks omitted).

## DISCUSSION

### A. Defendants' motion for Reconsideration Will Be Granted.

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, the Supreme Court recognized that a plaintiff may bring an implied damages remedy against a federal official for violation of the plaintiff's Fourth Amendment right to be free from unreasonable searches, despite the fact that no federal statute or constitutional provision allowed such a cause of action. 403 U.S. 388, 397 (1971). Since that decision, the Supreme Court has only recognized an implied damages remedy against a federal official in two other cases: *Davis v. Passman*, 442 U.S. 228, 245 (1979) (recognizing an implied cause of action for sex

4

discrimination under the Fifth Amendment), and *Carlson v. Green*, 446 U.S. 14, 18–23 (1980) (recognizing an implied cause of action for inadequate medical care under the Eighth Amendment). *See Mack v. Yost*, 968 F.3d 311, 314 n.1 (3d Cir. 2008).

In the absence of Supreme Court extension of the implied damages remedy under *Bivens*, lower federal courts concluded that they had the power to extend *Bivens* to new fact situations in appropriate circumstances. *See id.* at 319. That changed with the Supreme Court's decision in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017).

In *Ziglar*, the Supreme Court considered several *Bivens* claims brought to enforce the plaintiff's rights under the Fourth and Fifth Amendments, all of which were factually distinct from the claims in *Bivens*, *Davis*, and *Carlson*. *Id.* at 1853–54. In analyzing the claims, the court noted that it had taken a much more cautious approach to implying causes of action in the years since *Bivens* had been decided. *Id.* at 1855–56. Given that more cautious approach, the court acknowledged that the decisions in *Bivens*, *Davis*, and *Carlson* "might have been different if they were decided today." *Id.* at 1856. The Supreme Court instructed lower courts to be cautious in extending *Bivens* remedies to new contexts, noting that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity," and that decisions of

5

whether to recognize new causes of action should generally be left to Congress. *Id.* at 1857 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).

Under *Ziglar*, a court presented with a *Bivens* claim must conduct a two-part analysis. *Mack*, 968 F.3d at 320. First, the court "must determine whether the *Bivens* claim presents a 'new context.'" *Id.* (quoting *Ziglar*, 137 S. Ct. at 1859). A case presents a new context if "is different in a meaningful way from previous *Bivens* cases decided by the Supreme Court." *Id.* (internal alterations omitted) (quoting *Ziglar*, 137 S. Ct. at 1859). The difference between the two cases does not need to be stark, because "a modest extension is still an extension." *Id.* (quoting *Ziglar*, 137 S. Ct. at 164). Second, if the case presents a new context, the court "must then determine if there are 'special factors counselling hesitation' in expanding *Bivens*." *Id.* (quoting *Ziglar*, 137 S. Ct. at 1857). This determination "concentrate[s] on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* (quoting *Ziglar*, 137 S. Ct. at 1857–58.) "If 'there are any special factors that counsel hesitation,' courts must 'reject the request' to expand *Bivens*." *Id.* (quoting *Hernandez v. Mesa*, 140 S. Ct. 735, 743 (2020)).

More recently, on June 8, 2022, the Supreme Court decided *Egbert v. Boule*, 142 S. Ct. 1793 (2022). In that case, the Supreme Court clarified the framework that courts are to use before implying a cause action for money damages in a new

*Bivens* context. In particular, the Supreme Court recognized its precedent that described the two-part inquiry, but explained that these two parts "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *See id*. at 1803. The Supreme Court further explained that, "[i]f there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *See id*. (citation and internal quotation marks omitted).

Thus, the outcome of *Egbert* is—essentially—that extending a *Bivens* remedy to a new context will be unavailable in all but the most unusual of cases. *See id*. (instructing that "[i]f there is a rational reason" to think that Congress is better equipped to create a damages remedy, "as it will be in most every case, . . . no *Bivens* action may lie"). In other words, the Supreme Court has "all but closed the door on *Bivens* remedies." *See Dyer v. Smith*, 56 F.4th 271, 277 (4th Cir. 2022) (citation omitted).

Plaintiff's complaint includes a failure-to-protect claim against Defendants. (Doc. 1.) In addressing this claim in August of 2023, the court found that *Farmer v. Brennan*, 511 U.S. 825 (1994), was still precedent in light of *Egbert v. Boule*. (Doc. 45.) As a result, the court found that Plaintiff's failure-to-protect claim was not a new context under *Bivens* and allowed the claim to proceed. (*Id*.)

In *Farmer v. Brennan*, the Supreme Court held that prison officials may be held liable under the Eighth Amendment for the failure to protect the plaintiff's safety. 511 U.S. at 847. The plaintiff in *Farmer* filed a *Bivens* complaint, alleging a violation of the Eighth Amendment, because the defendants had placed the plaintiff in the general population despite knowledge that she, as a transgender woman, would be particularly vulnerable to sexual attack by some inmates. *Id.* at 830–31. Throughout the opinion, the Court referred to the matter as a *Bivens* action. *See id.* at 839 ("*Bivens* actions against federal prison officials (and their 42 U.S.C. § 1983 counterparts against state officials) are civil in character. . ."). The main inquiry concerned the deliberate indifference standard of Eighth Amendment claims. *Id.* at 842. Thus, the Court did not dispute whether the plaintiff's Eighth Amendment claim for failure to protect was an actual *Bivens* action. The Court held that a prison official could "be held liable under the Eighth Amendment for denying humane conditions of confinement," emphasizing that "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners." *Id.* at 833–34, 848.

In the August 2023 order, the court recognized that although *Egbert*, *Hernandez*, and *Ziglar* do not mention *Farmer* as one of the cases in which the Supreme Court recognized a *Bivens* remedy, the Third Circuit had held, post-*Ziglar*, that *Farmer* recognized an implied *Bivens* remedy for claims that prison

officials were deliberately indifferent to a risk that an inmate would be assaulted by other inmates.  (Doc. 45); *See Bistrian v. Levi*, 912 F.3d 79, 90–91 (3d Cir. 2018).  However, the Supreme Court's more recent decisions in *Hernandez* and *Egbert* and the Third Circuit's decision in *Dongarra v. Smith*, 27 F.4th 174 (3d Cir. 2022) was deemed to have clouded this conclusion.  (Doc. 45); *See Davis v. FCI-Schuylkill*, No. 1:22-CV-1270, 2022 WL 4348462, at *3 n.3 (M.D. Pa. Sept. 19, 2022) (Conner, J.).  The court found that *Dongarra* did not overrule *Bistrian* because *Dongarra* was not an *en banc* decision.  (Doc. 45); *See, e.g., Bracey v. Superintendent Rockview SCI*, 986 F.3d 274, 290 n.14 (3d Cir. 2021).

In their motion, the *Bivens* Defendants point to two recent Third Circuit cases: *Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024) and *Kalu v. Spaulding*, 113 F.4th 331 (3d Cir. 2024).  (Doc. 84.)  In *Fisher*, the Third Circuit foreclosed an implied cause of action under *Bivens* against federal officials for failure to prevent inmate-on-inmate violence in violation of the Eighth Amendment.  *Fisher*, 115 F.4th at 206; *Rinaldi v. United States*, No. 21-2298, 2024 WL 4579246 (3d Cir. Oct. 25, 2024).  In *Kalu*, the Third Circuit refused to extend *Bivens* to Eighth Amendment conditions of confinement claims brought by federally convicted prisoners because the Eighth Amendment claim was "far broader in scope than that in *Carlson*."  *Kalu*, 113 F.4th at 338.

Based on these new cases specifically overruling *Bistrian*, the court finds that Plaintiff has demonstrated good cause by demonstrating a change in the controlling law under *Qazizadeh*. *See Fisher*, 115 F.4th at 204 (The Supreme Court in *Egbert* "tightened the *Ziglar* test and, in doing so, made a strong statement that lower courts should not extend *Bivens* beyond the contexts recognized in *Bivens*, *Davis*, and *Carlson*."). Therefore, Plaintiff's motion for reconsideration will be granted.

### B. Plaintiff's Failure to Protect Claim Presents a New Context Under *Bivens* and Will Be Dismissed.

As discussed above, Plaintiff asserts a *Bivens* claim based upon allegations of a failure to protect him against inmate-on-inmate violence. Specifically, Plaintiff alleges a prearranged attack on Plaintiff by another inmate on December 28, 2021. (Doc. 1.)

Specifically, Plaintiff alleges that on December 22, 2021, he arrived at USP Canaan on a wheelchair transfer from another USP facility due to a knee injury. (*Id*., p. 9.) He requested protective custody from Lieutenant Young due to threats to his life. (*Id*.) He alleges that Defendant Frisk was present and told Plaintiff that he controlled the isolated/protective housing unit, and if he did not go to general population, he would make it "a living hell" for Plaintiff in the protective housing unit. (*Id*.)

Nonetheless, Plaintiff was sent to protective custody on December 22, 2021, and while in handicap cell 140, Defendant Burgh placed Inmate Blaine in the cell with Plaintiff. (*Id.*) Plaintiff alleges that Inmate Blaine is a well-known violent inmate who was in protective custody for new federal charges for stabbing another inmate. (*Id.*) While Inmate Blaine was placed in the cell, Plaintiff told Defendant Burgh that he was not supposed to be housed with inmates with a status such as Inmate Blaine. (*Id.*) To which Defendant Burgh allegedly responded by reminding Plaintiff that he was told that they were going to make this stay "a living hell." (*Id.*) Plaintiff alleges that Inmate Blaine then told him he was placed in the cell to beat Plaintiff up. (*Id.*)

Plaintiff alleges that in the following days, Defendants Burgh and Frisk came by the cell making comments to Inmate Blaine such as "He still in there" and "you done got soft." (*Id.*) Plaintiff alleges that on December 28, 2021, Defendant Bruch told Inmate Blaine "you need to do something today" so inmate Blaine told Plaintiff to tell the officer to get me out of the cell or he was going to beat him up. (*Id.*) At 5:30 p.m., Plaintiff pushed the emergency button to inform the officer working the range that he was in fear for his life with inmate Blaine threating to cause him bodily harm. (*Id.*) Defendant Orth told him that since he was not bleeding, he did not care about his safety. (*Id.*)

Plaintiff alleges that when Defendant Orth left, Inmate Blaine started choking Plaintiff as he sat in a wheelchair. (*Id.*) When Inmate Blaine stopped choking him, Plaintiff alleges that he hit the emergency button. (*Id.*) When Defendant Orth made his next rounds at 6:00 p.m., Plaintiff told him that Inmate Blaine had choked him and requested help. (*Id.*) Plaintiff alleges that Defendant Orth again refused. (*Id.*)

When Defendant Orth left, Plaintiff alleges that Inmate Blaine began punching Plaintiff in the face and head area. (*Id.*) Plaintiff alleges that he fell out of his wheelchair and Inmate Blaine punched him more in the face and head. (*Id.*) Plaintiff called for help and the inmates in the cell across from him said they hit the emergency button until Defendant Orth did his next security round at 6:40 p.m.

When Defendant Orth arrived, Inmate Blaine was in the back of the cell and Plaintiff was on the floor of the cell with a bleeding face and requested Defendant Orth's help. (*Id.*) Plaintiff states that Defendant Orth said "stop fighting" and opened the tray flap and started spraying Plaintiff with O.C. spray. (*Id.*) Plaintiff alleges that Defendant Keen told Inmate Blaine to get behind the shower curtain and shot Plaintiff in the back at least 16 times with a .68 cal pepper ball launcher. (*Id.*) Defendant Keen told Plaintiff to cuff-up, and Plaintiff crawled back into his wheelchair. (*Id.*) Defendant Keen then told Plaintiff to stand up and cuff-up or he

12

would shoot Plaintiff some more.  He stated that he crawled up the wall due to his pre-existing knee injury and leaned on the door to cuff up.  (*Id.*)

As set forth in detail above, an Eighth Amendment failure-to-protect claim stemming from inmate-on-inmate violence constitutes a new context under *Bivens*. *Fisher*, 115 F.4th at 204.  Therefore, the court must determine under *Ziglar* and *Egbert* whether there are any special factors that counsel hesitation in the court extending a *Bivens* remedy to this claim.  *See Egbert*, 142 S. Ct. at 1803.

As explained by the Supreme Court, a special factor suggests that Congress is better equipped than the Judiciary to "weigh the costs and benefits" of creating a new damages remedy.  *See Egbert*, 142 S. Ct. at 1803 (citation and internal quotation marks omitted).  Although various special factors may be considered, "two are particularly weighty: the existence of an alternative remedial structure and separation-of-powers principles."  *See Bistrian*, 912 F.3d at 90 (citation omitted); *Ziglar*, 582 U.S. at 135 (stating that "[s]eparation-of-powers principles are or should be central to the analysis").  If "there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed[,]'" then the court cannot imply a cause of action for damages under *Bivens*.  *See Egbert*, 142 S. Ct. at 1805 (emphasis in original) (citation and internal quotation marks omitted).

Here, the court finds that there are special factors that weigh against extending a *Bivens* remedy to Plaintiff's Eighth Amendment failure-to-protect claim. Initially, the court finds that the Bureau of Prison's Administrative Remedy Program provides an alternative process for addressing Plaintiff's claims. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001) (holding that "administrative review mechanisms" can provide "meaningful redress and thereby forelose[ ] the need to fashion a new, judicially crafted cause of action[,]" even if those mechanisms do not "fully remedy the constitutional violation . . ."); *see also* 28 C.F.R. § 542.10(a) (providing that "[t]he purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement"); *see* 28 C.F.R. § 542.14(d)(2) (including appeals of Decisions of Hearing Officers as part of the Administrative Remedy Program). Indeed, and as instructed by the Supreme Court, alternative remedies for aggrieved parties "independently foreclose a *Bivens* action." *See Egbert*, 142 S. Ct. at 1806; *Malesko*, 534 U.S. at 69 (stating that, "[s]o long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability" (citation omitted)). Thus, "when alternative methods of relief are available," as they are here, "a *Bivens* remedy usually is not." *See Ziglar*, 582 U.S. at 145.

In addition, the court finds that "the Judiciary is not undoubtedly better positioned than Congress to authorize a damages action" in the context of a failure to protect claim in federal prisons. *See Egbert*, 142 S. Ct. at 1805. The Supreme Court has generally acknowledged that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform[,]" that "[r]unning a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government[,]" and that this "task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." *See Turner v. Safley*, 482 U.S. 78, 84–85 (1987) (emphasis added) (internal citation and internal quotation marks omitted). Thus, extending a *Bivens* remedy to this new context "would step well into the lawmaking privilege delegated only to Congress, and well over the bounds of [the court's] limited constitutional power." *See Mammana v. Barben*, 856 F. App'x 411, 415 (3d Cir. 2021) (unpublished) (setting forth this principle in the context of a *Bivens* claim based upon allegedly unconstitutional conditions of confinement in violation of the Eighth Amendment).

Additionally, the court finds that "recognizing a *Bivens* remedy [here] would likely cause an increase of suits by inmates, increased litigation costs to the government, and . . . burdens on individual prison employees to defend such

claims." *See Bistrian*, 912 F.3d at 95 (citation and internal quotation marks omitted). "Heeding the reasoning in [*Ziglar v.*] *Abbasi*, [courts] must be reluctant to 'establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation.'" *Id*. (quoting *Ziglar*, 582 U.S. at 136); *Egbert*, 142 S. Ct. at 1800 (stating that Supreme Court precedent has "made clear that, in all but the most unusual circumstances," a *Bivens* remedy should not be recognized in new contexts). Thus, for all of these reasons, the court concludes that special factors counsel hesitation in extending a *Bivens* remedy to Plaintiff's Eighth Amendment claims.

In sum, the court concludes that Plaintiff's Eighth Amendment failure-to-protect claim raises a new *Bivens* context, and there are sound reasons to find that Congress is better positioned than the Judiciary to "weigh the costs and benefits of allowing a damages action to proceed" here. *See Egbert*, 142 S. Ct. at 1803 (citation and internal quotation marks omitted). Accordingly, because there are such reasons to defer to Congress, the court will refrain from extending a *Bivens* remedy to Plaintiff's claim. *See id*. Therefore, the court will dismiss Plaintiff's Eighth Amendment failure to protect claim.

Since the sole constitutional claim, the Eighth Amendment failure-to-protect claim, will be dismissed, there can be no continuation of the conspiracy to commit constitutional violations claim. Therefore, pursuant to the court's inherent power

under 28 U.S.C. § 1915A, the conspiracy claim is also dismissed. These were the sole remaining claims pending against the *Bivens* Defendants in this action. Therefore, the *Bivens* Defendants will be terminated in this case, and the sole remaining Defendant will be the United States.

### C. Defendants' Motion for Protective Order Will Be Denied as Moot.

On October 22, 2024, the *Bivens* Defendants filed a motion for protective order seeking relief from discovery while the motion for reconsideration was pending. (Doc. 61.) Since this order resolves the motion for reconsideration, the motion for protective order will be denied as moot.

### CONCLUSION

For the reasons set forth above, the court will grant Defendants' motion for reconsideration, dismiss the Eighth Amendment failure-to-protect claim and the conspiracy claim, terminate the *Bivens* Defendants as parties to this action, and deny the motion for a protective order as moot. The court will set forth a case management schedule to address the FTCA claim raised against the United States.

An appropriate order follows.

s/Jennifer P. Wilson<br>
JENNIFER P. WILSON<br>
United States District Judge<br>
Middle District of Pennsylvania

Dated: December 16, 2024